Filed 3/30/15  In re Marcos B. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re MARCOS B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARCOS B.,<br><br>    Defendant and Appellant. | G049513<br><br>(Super. Ct. No. DL039797)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Cheryl L. Leininger, Judge.  Affirmed.

Sarita Ordóñez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

After the juvenile court denied Marcos B.'s (minor) motion to suppress evidence, minor admitted the allegations in a juvenile wardship petition that he possessed or transported heroin (count 1) and methamphetamine (count 2). The court placed minor on probation on the conditions he spend 60 days in a juvenile institution, pay $100 in restitution, and attend an outpatient drug program.

Minor contends the court erred in denying his motion to suppress. We disagree.

FACTS

Dominic Padilla has been a police officer for over 13 years, with extensive training and experience in drug surveillance. For four of those years, he worked undercover as part of a strike force team. He parked in areas known for the sale of drugs and reported his observations to assisting officers. In the constantly evolving practice of drug transactions, drug dealers now commonly have a "negotiator" or "facilitator" posted in a parking lot who, upon being contacted, will direct a purchaser to the location of the person who has the drugs for sale. As an undercover officer, Padilla has personally observed this type of transaction over 20 times. Such drug deals are not limited to the evening hours but occur throughout the day, including in broad daylight.

One evening around 7:00 p.m., Padilla was working undercover for the strike force team at a grocery parking lot "well-known for drug sales." He noticed a man sitting on a block wall. When a vehicle pulled up, the man walked over to the driver's side, leaned in, and spoke to the vehicle's occupants. The man then grabbed his cellular phone and appeared to be texting or making a phone call.

Minor got out of the passenger side of the vehicle and walked across the street to a residence. He met with a man at the door before they went inside. About two

minutes later, minor left the residence "holding what looked like a white plastic bag" and got back into the vehicle.

Based on his training and expertise, Padilla believed he had just witnessed "a possible street-level drug transaction." For that reason, he radioed the assisting officer, John Rodriguez, and told him what he had observed. As the vehicle drove towards him, Rodriguez saw "a large crack," approximately 4 to 6 inches long, on the driver's side of the windshield. He stopped the vehicle based on Padilla's information and the cracked windshield.

DISCUSSION

Minor argues his detention was not supported by reasonable suspicion, violating his rights to be free from unreasonable searches and seizures. The contention lacks merit.

"The standard of review of a trial court's ruling on a motion to suppress is well established and is equally applicable to juvenile court proceedings. '"On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.] We must uphold those express or implied findings of fact by the trial court that are supported by substantial evidence and independently determine whether the facts support the court's legal conclusions."'" (*In re Lennies H*. (2005) 126 Cal.App.4th 1232, 1236.)

"In order to justify an investigative stop or detention, 'the circumstances known or apparent to the officer must include specific or articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a

3

like position, drawing when appropriate on his training and experience . . . to suspect the same criminal activity and the same involvement by the person in question.  The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch, is unlawful, even though the officer may be acting in complete good faith.'" (*In re James D*. (1987) 43 Cal.3d 903, 919-920.)  In sum, a "detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

A reasonable suspicion of involvement in criminal activity will justify a temporary stop and detention even though the circumstances are also consistent with lawful activity.  Typically, the purpose of the detention is to resolve the ambiguity. (*Souza*, *supra*, 9 Cal.4th at p. 233.)  Even if individual factors are susceptible to innocent explanation, and some factors are more probative than others, taken together, they may suffice to form a particularized and objective basis for an investigatory stop.  (*Ibid*.)

"An area's reputation for criminal activity is an appropriate consideration in assessing whether an investigative detention is reasonable under the Fourth Amendment." (*Souza*, *supra*, 9 Cal.4th at p. 240.)  An officer may also rely on "the modes or patterns of operation of certain kinds of lawbreakers" in determining whether there is reasonable suspicion to support an investigatory detention, because "a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person." (*United States v. Cortez* (1981) 449 U.S. 411, 418 [101 S.Ct. 690, 66 L.Ed.2d 621].)  Therefore, in order to make a determination of reasonable suspicion, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" (*United States v. Arvizu* (2002) 534 U.S. 266, 273 [122 S.Ct. 744, 151 L.Ed.2d 740].)  "The specialized knowledge of a police officer

experienced in police narcotics work may render suspicious what would appear innocent to a layman." (*People v. Maltz* (1971) 14 Cal.App.3d 381, 390.)

Here, Padilla had extensive training and experience relating to narcotics surveillance. Based on that, he knew the current practice in drug transactions is for a middleman sitting in a parking lot to negotiate or facilitate the deal before directing the purchaser to a location to obtain the drugs. While undercover, Padilla has personally seen this occur over 20 times. On the evening in question, Padilla believed he witnessed this type of transaction taking place: A man sitting on a block wall in a parking lot "well-known for drug sales" was approached by a vehicle in which minor was a passenger. The man approached and spoke to the vehicle's occupants, after which the man called or sent a text message on his cellular phone. Minor then got out of the vehicle and entered a residence across the street. When minor came out two minutes later, he was holding a small plastic bag. Padilla's observations alone provided a basis for him to reasonably suspect criminal activity had occurred, giving Rodriguez probable cause to stop the vehicle minor was riding in. Therefore, we need not reach the issue of whether the crack Rodriguez saw on the vehicle's windshield gave him a "backup ground" to stop the vehicle.

Minor maintains Padilla had only a "'mere hunch'" a drug transaction had occurred because Padilla could not hear or see any specifics. Minor notes Padilla could not hear the conversation between the man on the block wall and the occupants of the vehicle. Nor did Padilla see minor take anything with him when getting out of the vehicle or the man on the cell phone take anything from minor, what was inside the bag minor was carrying, or whether minor handed anything to the driver when he returned to the vehicle. But minor cites no authority suggesting that such details are necessary before police officers may suspect that a person is or has engaged in criminal activity. He also makes no mention of Padilla's training and experience with regard to narcotics surveillance.

5

Minor further points out "it was 7:10 p.m. and the grocery store was open." But while "[t]he time of night is another pertinent factor in assessing the validity of a detention" (*Souza*, *supra*, 9 Cal.4th at p. 241), Padilla expressly testified that drug transactions using a middleman occur throughout the day, including in broad daylight. The time of the offense was thus irrelevant in this case.

This case is not, as defendant suggests, similar to *In re Tony C*. (1978) 21 Cal.3d 888, superseded by statute as stated in *In re Christopher B.* (1990) 219 Cal.App.3d 455, 460, fn. 2. There, the California Supreme Court held that a police officer did not have reasonable suspicion to detain two minors where the officer "had been informed only that the suspects in the prior burglaries were 'three male blacks' of unspecified ages" because "[s]uch a vague description could not reasonably have led [the officer] to suspect these *two* black *minors* were the missing culprits." (*In re Tony C.,* at p. 898, fn. omitted.) Here, in contrast, the observations by Padilla were not "shoddy" or "a 'mere hunch' at best," as defendant claims. Padilla stated specific, articulable facts that, considered in light of the totality of the circumstances, provided an objective manifestation that minor was involved in criminal activity thus justifying the detention. (*People v. Mayfield* (1997) 14 Cal.4th 668, 791.)

Minor's reliance on *People v. Perrusquia* (2007) 150 Cal.App.4th 228 is also misplaced. The officers in *Perrusquia* were patrolling a "high-crime area," looking for possible 7-Eleven robbers. All the officers knew was there had been a string of 7-Eleven robberies in that neighborhood, but had no information about whether the 7-Eleven in question had been or was about to be robbed. The officers found the defendant outside an open 7-Eleven, waiting in his car with his engine idling, but had no information tying the defendant to a particular crime. (*Id*. at pp. 230-231.) The officers detained the defendant when he tried to walk past them toward the store. (*Id*. at p. 231.) Without the defendant's consent, the officers conducted a patdown search and found a

gun. (*Id*. at pp. 231-232.) *Perrusquia* found the detention unlawful because it was based on a mere "hunch." (*Id*. at p. 234.)

In comparison, Padilla knew the specific parking lot where the incident occurred was "well-known for drug sales." Based on his experience and training, he observed minor to be involved in what he believed to be typical of drug transactions he had personally seen over 20 times. Accordingly, unlike the officers in *Perrusquia*, *supra*, 150 Cal.App.4th at p. 234, Padilla had a reasonable, articulable suspicion that defendant had engaged in criminal activity.

Based on the above, the trial court properly denied minor's motion to suppress.

DISPOSITION

The order is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.

7